IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PAUL EDWARD PRATT, Individually and as Guardian Ad Litem for CHERYL J. PRATT and on behalf of DP and PP, Minor Children,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 08-2502-JAR<br>)<br>)<br>)<br>) |

**<u>ORDER</u>**

This is a medical malpractice case. The plaintiff, Paul Edward Pratt, individually and on behalf of his wife, Cheryl J. Pratt, and their children, DP and PP, has brought suit against the defendant, United States of America, under the Federal Tort Claims Act. Pratt alleges negligence in failing to diagnose Cheryl with bacterial meningitis at Irwin Army Community Hospital on the Fort Riley Army Base in October 2006. Since that time, Cheryl has been suffering from severe and irreparable brain injuries.

This matter is currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, on the motion of the United States for an order pursuant to Fed. R. Civ. P. 35(a) compelling Pratt, as Cheryl's guardian ad litem, to produce Cheryl for computerized tomography (CT) and magnetic resonance imaging (MRI) scans (**doc. 74**). Initially, Pratt did not oppose such an examination, but he has withdrawn that consent because Cheryl's

treating physician would not sign-off on the requested CT and MRI scans.[1] Thus, Pratt has filed an opposition to the United States' motion (doc. 80). The United States has filed a reply (doc. 81).

Fed. R. Civ. P. 35(a) provides that, upon a motion and for good cause, "[t]he court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."[2] The United States is requesting that Pratt produce Cheryl pursuant to Rule 35 so that she can undergo CT and MRI scans, under sedation or general anesthesia if necessary, at a location and with providers of Pratt's choosing. Sedation or general anesthesia is most likely necessary due to Cheryl's condition—it is unlikely she could remain still long enough to allow the tests to be completed. Pratt does not dispute that Cheryl's condition is in controversy; however, he opposes the motion on the grounds that the scans would be of minimal value compared to the risks they would pose to Cheryl's health.

In deciding whether to order a medical examination under Fed. R. Civ. P. 35, the

---

[1] The current deadline for an independent medical examination is May 14, 2010. Doc. 72. Numerous requests have previously been made to extend the time to complete the examination, most of which were unopposed. *See* docs. 30, 38, 41, 46, 54, and 71. At least some of those requests indicated that plaintiff did not oppose the exam. *See* doc. 54 at 2 ("Plaintiffs counsel have taken the responsibility for the scheduling of Cheryl Pratt's MRI and CT imaging, to be held at Geary Community Hospital for the independent medical examination.").

[2] *See also Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964).

court may weigh the need for such an exam with the safety risks associated with it.[3] Whether to order a party to submit to a medical examination claimed to be unsafe, as the argument goes here, appears to be an issue of first impression in this district. Other district courts in the Tenth Circuit, however, have addressed this issue and have applied a burden-shifting approach. In such a situation, a plaintiff opposing a medical examination bears the initial burden of showing that the proposed exam is potentially dangerous. Once this has been shown, the burden shifts to the party seeking the examination to demonstrate both the need for the requested action and its safety.[4] The moving party can show the safety of the requested exam through an affidavit of an expert.[5]

Pratt cites to the recent deposition testimony of Cheryl's treating physician, Dr. Richard Lochamy, to support his claim that subjecting Cheryl to CT and MRI scans would not benefit Cheryl's treatment and thus is not worth the risks posed by them. The court would first note that Pratt has not provided any evidence of Dr. Lochamy's opinion other than just reciting what Dr. Lochamy apparently recently testified about in his April 28, 2010 deposition. Pratt does state that the transcripts of Dr. Lochamy's deposition were not yet available as of the date of filing. Presumably, however, an affidavit stating Dr. Lochamy's

---

[3] *Bennett, By and Through Bennett v. Fieser*, No. 93-1004, 1994 WL 542089, at *1 (D. Kan. Feb. 25, 1994).

[4] *Pena v. Troup*, 163 F.R.D. 352, 353 (D. Colo. 1995) (citing *Lefkowitz v. Nassau County Med. Ctr.*, 94 A.D.2d 18 (N.Y. App. Div. 1983)).

[5] *Id.*

views could have been prepared and submitted.

Nonetheless, the sedation or general anesthesia that would apparently be necessary to conduct CT and MRI scans on Cheryl do carry attendant risks.[6] Even the United States' own expert concedes as much.[7] Thus, the burden then shifts to the United States to demonstrate both the relative safety of the requested exam and its necessity.

As part of its motion, the United States has submitted the affidavit of Dr. Alan Reeves. Dr. Reeves, a licensed physician who is board certified in radiology and neuroradiology, states that there is little danger posed by the CT and MRI scans themselves, nor would the use of a contrasting dye present any significant health risk to Cheryl as her medical records suggest that she has come in contact with such dyes in the past without adverse reaction. The only risk attendant with the requested examination relates to the use of general anesthesia. However, Dr. Reeves states that such a risk is minor compared to the information that CT and MRI scans could provide in this instance. He notes that MRI scans under general anesthesia are "routinely" performed.

With regard to the necessity of these scans, Pratt maintains that it is Dr. Lochamy's

---

[6]Pratt's position is unclear as to whether the risks in this case are the generalized risks associated with general anesthesia or whether there are specific risks to Cheryl because of her particular condition. Pratt states that the use of a general anesthetic would require intubation, and that due to Cheryl's condition, there is a risk of aspiration when she is unconscious. But it is unclear if intubation would alleviate the risk of aspiration. Pratt also states that Cheryl "cannot be properly intubated during the procedure to protect her airway," but he offers no support for this statement.

[7]Ex. 5 to doc. 75 ("There is a risk with general anesthesia.").

position that CT and MRI scans at this juncture are *medically* unnecessary and will not benefit Cheryl's *treatment* in any way. But the real issue here is the necessity of these tests to this case, i.e., the matter in controversy, not the medical benefit.

The United States argues that these scans could demonstrate the cause of Cheryl's injuries—either meningitis or prolonged hypotension—and that causation is a significant issue in this case. According to Dr. Reeves's affidavit, the scans will reflect the pattern of changes in Cheryl's condition since the last scans were done in 2006, and that "[t]he pattern of these changes can be helpful in determining the underlying cause (i.e., stroke, trauma, prolonged hypotension, etc.)."[8] Pratt highlights certain language in the United States' motion that he says shows that the United States is admitting that the testing will not help distinguish between the two causes, i.e., meningitis or hypotension. But all that language says is that the CT and MRI scans "may" indicate the cause of Cheryl's injuries. This is not an admittance of the futility of anything. And while Pratt is correct that Dr. Reeves's affidavit does not state unequivocally that the CT and MRI scans will positively distinguish the cause of Cheryl's brain damage, he does state that the scans would "assist in differentiating the underlying cause."[9] In the court's view, this adequately demonstrates the United States' need for these tests.

Pratt also suggests that previous CT and MRI scans performed in 2006 are adequate

---

[8]*Id.*

[9]*Id*.

because Cheryl's condition remains unchanged since that time.  But Dr. Reeves also addresses this point, stating that "[t]he extent of the initial injury can only be assessed accurately with a follow-up scan such has been requested."[10]  Further, as both Dr. Reeves and the United States point out, the quality of the 2006 scans are in question because they were not preserved digitally.

Given this evidence, the court finds that the United States has adequately demonstrated both the relative safety of the requested tests and their necessity.[11]  Ordering tests such as those requested here is not undertaken lightly.  However, Pratt, in filing this lawsuit, has put Cheryl's condition at issue.[12]  The United States has adequately shown the necessity of such information and the relative safety of the scans requested here, and it is entitled to the tests it seeks so that it may prepare its defense.

The United States agrees that the requested CT and MRI scans[13] can be performed at a location and with providers of Pratt's choosing, with all costs assessed to the United States. This comports with Pratt's request in his response that, in the alternative to denying the

---

[10]*Id.*

[11]*See also Pena*, 163 F.R.D. at 355–56 (allowing an MRI under sedation or general anesthesia of a young woman where defendant produced two affidavits of doctors stating the necessity of the test and the minimal risks associated with the procedure).

[12]*See* Complaint, doc. 1 at 6 ("Defendants' failure to timely treat and diagnose Cheryl's streptococcus pneumonia meningitis the evening of October 5, 2006, caused or contributed to cause Cheryl's subsequent and permanent brain injuries.").

[13]The United States' motion and Dr. Reeves's affidavit recite the needed sequences of the CT and MRI scans.  Doc. 75 at 7–8.

United States' motion, the court "allow such testing only if Defendant agrees to take all available measures to ensure the safety of Mrs. Pratt, at no cost to the Plaintiffs."[14] The United States' reply states that the parties "understand that if the Court issues an order under Fed. R. Civ. P. 35, that Dr. Lochamy will conduct or be in charge of the conduction of the MRI/CT scans at Geary Community Hospital."[15] As Cheryl's treating physician, Dr. Lochamy ought to be in a position to ensure that all appropriate safety precautions are taken to ensure Cheryl's health and safety during the scans.

Due to the rapidly approaching discovery deadline in this case, the scans shall be completed and the digital images sent to the United States' counsel and Dr. Reeves by no later than **May 25, 2010**. The United States' independent medical examination report shall be served by **June 1, 2010**.

IT IS SO ORDERED.

Dated May 7, 2010, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[14]Doc. 80 at 4.

[15]Doc. 81 at 3.